```
                    IN THE UNITED STATES DISTRICT COURT

                         FOR THE DISTRICT OF OREGON


DENISE DOHERTY,                              09-CV-98-BR

          Plaintiff,                         OPINION AND ORDER

v.

TRGISKY, INC., and
MICHAEL KNIGHT,

          Defendants.


DANNY L. HITT
Hitt Hiller & Monfils, LLP
411 S.W. Second Ave.
Portland, OR 97204
(503) 228-4250

          Attorneys for Plaintiff

CARTER M. MANN
MATTHEW S. KIRKPATRICK
Foster Pepper Tooze, LLP
601 S.W. Second Ave., Suite 1800
Portland, OR 97204

          Attorneys for Defendants
```

1   -   OPINION AND ORDER

**BROWN, Judge.**

This matter comes before the Court on the Motion (#7) to Remand filed by Plaintiff Denise Doherty and the Motion (#5) to Dismiss Claim Five of Doherty's Second Amended Complaint filed by Defendants TRGiSKY, Inc., and Michael Knight for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6).

For the reasons that follow, the Court **DENIES** Plaintiff Doherty's Motion (#7) to Remand, **GRANTS** the Motion to Dismiss (#5) filed by TRGiSKY and Knight, and **DISMISSES** Claim Five of Doherty's Second Amended Complaint.

## BACKGROUND

The parties do not dispute Doherty and Knight are residents of Oregon and TRGiSKY is a Delaware corporation with its principal place of business in Maryland.

Doherty alleges the following facts in her Second Amended Complaint:

Doherty was employed by TRGiSKY from August 15, 2005, to September 17, 2007, in Deschutes County, Oregon.  During her employment, Doherty took family medical leave due to tendinitis and fibromyalgia.  Defendants were aware of Doherty's medical conditions and made special accommodations for them in 2006.

In August 2007, Doherty experienced an increase in symptoms from her fibromyalgia as a result of keyboarding.  Defendants

2   -   OPINION AND ORDER

understood Doherty planned to file a workers' compensation claim.

In late summer 2007, Knight, TRGiSKY's human resources director, announced TRGiSKY was changing its policies and procedures for taking family leave.  For example, under TRGiSKY's new policy, employees who had previously been granted family leave under the Family Medical Leave Act or the Oregon Family Leave Act would have to be recertified by their doctors to establish their need for medical leave.  Employees requesting medical leave also would have to be interviewed by Knight and would have to provide Knight with any medical information that he requested regardless of whether it was related to the specific condition for which the leave had been requested.  Employees who missed work without first satisfying the conditions under the new policy would be subject to discipline.  In addition, TRGiSKY's new policy required employees to undergo medical examinations in order to qualify for medical leave.  The examinations were scheduled by TRGiSKY to take place during working hours, but employees were not paid for the time they missed from work due to the required medical examinations.  TRGiSKY also adopted a practice of denying medical-leave requests for conditions that could be controlled by medication.

On September 4, 2007, Doherty provided TRGiSKY with a medical-restriction form that had been completed by her doctor requesting an accommodation of reduced keyboarding for two months

3   -   OPINION AND ORDER

because of Doherty's tendinitis and fibromyalgia.  As noted, TRGiSKY had honored a similar request in 2006.

On September 5, 2007, Knight met with Doherty.  At the meeting, Knight informed Doherty that the medical-restriction form she had submitted was unacceptable because Doherty's doctor could not evaluate her ability to perform the keyboarding functions of her job without a formal, written job description under TRGiSKY's new policy.  Knight, nevertheless, refused Doherty's request to provide her doctor with a job description.  In addition, Knight refused to provide Doherty with a copy of the company policy that described what was required from Doherty's doctor.

On September 7, 2007, Knight placed Doherty on an unpaid leave of absence until her doctor completed a "Return to Work Evaluation Form" because her work duties might be causing her tendinitis and fibromyalgia.  The Return to Work Evaluation Form was to be returned to TRGiSKY by September 10, 2007.

The Return to Work Evaluation Form requires an assessment of a person's ability to perform tasks such as sitting, standing, walking, bending, squatting, crawling, climbing, reaching, crouching, kneeling, balancing, carrying, and driving.  It also includes an assessment of a person's ability to work at heights, to operate machinery, and to tolerate environmental conditions such as temperature variations and dust.

4   -   OPINION AND ORDER

Doherty's doctor advised Doherty that she could not complete the form because a physical therapist needed to complete it.  In addition, Doherty's doctor sent her a certified letter dated September 6, 2007, withdrawing as her doctor.

Knight sent Doherty a letter dated September 12, 2007, in which he stated she would be subject to termination if the Return to Work Evaluation Form was not completed and returned by 9:00 a.m. on September 17, 2007.

Doherty received Knight's letter on September 13, 2007, and her doctor's certified letter on September 14, 2007.  Doherty took the letter from her doctor to TRGiSKY and requested additional time to locate a new medical-care provider in order to complete the required Return to Work Evaluation Form.  In addition, Doherty left a voicemail message for her supervisor, Kristine Myer, in which she stated she had an appointment scheduled on September 21, 2007, with a new medical-care provider who would complete the form.

In a letter dated September 17, 2007, Knight informed Doherty that failure to report to work on September 17, 2007, would be considered "position abandonment" and TRGiSKY would terminate Doherty's employment at that time.

Doherty received the letter from Knight on September 18, 2007.  She called Myers, informed her that there must have been a mistake, and asked for an opportunity to explain.  Myers

5   -   OPINION AND ORDER

transferred Doherty to Knight's voicemail, and Doherty left him a message requesting an opportunity to explain the situation. Knight did not return Doherty's voicemail message.

On September 18, 2007, Defendants terminated Doherty's employment on the ground of "position abandonment" with the recommendation not to rehire Doherty because of attendance problems.

Doherty reported to work on September 19, 2007, but she was informed her employment had been terminated. She was escorted from the premises.

On September 3, 2008, Doherty filed a complaint in Multnomah County Circuit Court alleging various violations of the Oregon workers' compensation and family-leave statutes as well as common-law wrongful discharge and intentional infliction of emotional distress (IIED).

On January 12, 2009, Doherty filed a second amended complaint in Multnomah County Circuit Court alleging (1) TRGiSKY intentionally discriminated against Doherty due to her disability in violation of Oregon Revised Statute § 659A.103, *et seq.*; (2) TRGiSKY discriminated against Doherty as a result of her exercise of her rights under the workers' compensation system in violation of Oregon Revised Statute § 659A.040; (3) TRGiSKY retaliated and discriminated against Doherty for her use of family leave in violation of Oregon Revised Statute § 659A.183;

6   -   OPINION AND ORDER

(4) TRGiSKY wrongfully discharged Doherty; and (5) TRGiSKY and Knight intentionally inflicted emotional distress on Doherty. Doherty also added a request for damages of a minimum of $250,000.

On January 23, 2009, Defendants removed the matter to this Court based on diversity jurisdiction pursuant to 28 U.S.C. § 1332(a).  In their Notice of Removal, Defendants asserted Knight's Oregon citizenship should be disregarded in evaluating whether there is complete diversity of citizenship among the parties.  On January 23, 2009, Defendants also filed a Motion to Dismiss pursuant to Rule 12(b)(6) requesting this Court to dismiss Doherty's Claim Five for IIED as to both Defendants for failure to state a claim upon which relief can be granted.

On February 6, 2009, Doherty filed a Motion to Remand to State Court.

**STANDARDS**

I.   Remand.

An action filed in state court may be removed to federal court if the federal court would have had original subject-matter jurisdiction over the action.  28 U.S.C. § 1441(a).  28 U.S.C. § 1332(a) authorizes district courts to exercise original jurisdiction over civil actions in which the matter in controversy exceeds the sum or value of $75,000

7  -   OPINION AND ORDER

exclusive of interest and costs, the parties are citizens of different states, and citizens or subjects of a foreign state are additional parties.  A motion to remand is the proper procedure for challenging removal.  *Babasa v. LensCrafters, Inc.*, 498 F.3d 972, 974 (9th Cir. 2007).  The removal statute is strictly construed, and any doubt about the right of removal is resolved in favor of remand.  *Durham v. Lockheed Martin Corp.*, 445 F.3d 1247, 1252 (9th Cir. 2006).  *See also Prize Frieze, Inc. v. Matrix, Inc.*, 167 F.3d 1261, 1265 (9th Cir. 1999), *overruled on other grounds by Abrego Abrego v. The Dow Chem. Co.*, 443 F.3d 676 (9th Cir. 2006).  The party seeking removal bears the burden of establishing by a preponderance of the evidence that all removal requirements are met.  *Serrano v. 180 Connect, Inc.*, 478 F.3d 1018, 1021 (9th Cir. 2007).  *See also Valdez v. Allstate Ins. Co.*, 372 F.3d 1115, 1117 (9th Cir. 2004).

For removal to be valid based on diversity jurisdiction, 28 U.S.C. § 1332(a) "requires complete diversity of citizenship."  *Morris v. Princess Cruises, Inc.*, 236 F.3d 1061, 1067 (9th Cir. 2001).  One exception to the requirement of complete diversity, however, is when a nondiverse defendant has been fraudulently joined for the purpose of defeating diversity jurisdiction.  *Mercado v. Allstate Ins. Co.*, 340 F.3d 824, 826 (2003)(citing *McCabe v. Gen. Foods Corp.*, 811 F.2d 1336, 1339 (9th Cir. 1987)).  A district court may disregard the citizenship of a nondiverse

8   -   OPINION AND ORDER

party named in the complaint if joinder of the nondiverse party is a sham or fraudulent. *Plute v. Roadway Package Sys., Inc.*, 141 F. Supp. 2d 1005, 1008 (N.D. Cal. 2001). Fraudulent joinder, however, does not impugn the integrity of the plaintiffs or their counsel and does not constitute an intent to deceive. *Lewis v. Time Inc.*, 83 F.R.D. 455, 460 (E.D. Cal. 1979), *aff'd by* 710 F.2d 549 (9th Cir. 1983). Instead

> [j]oinder of a non-diverse defendant is deemed fraudulent, and the defendant's presence in the lawsuit is ignored for purposes of determining diversity, if the plaintiff fails to state a cause of action against a resident defendant, and the failure is obvious according to the settled rules of the state.

*Morris*, 236 F.3d at 1067.

A defendant seeking removal to federal court "is entitled to present the facts showing the joinder to be fraudulent." *McCabe*, 811 F.2d at 1339. *See also Ritchey v. Upjohn Drug Co.*, 139 F.3d 1313, 1318 (9th Cir. 1998), *cert. denied*, 525 U.S. 963 (1998). To resolve fraudulent-joinder claims, the court may look beyond the pleadings and consider evidence similar to that offered in summary-judgment proceedings such as affidavits and deposition testimony. *Morris*, 236 F.3d at 1067. A district court must resolve all questions of disputed fact and controlling law against the party seeking removal. *Burden v. Gen. Dynamics Corp.*, 60 F.3d 213, 217 (5th Cir. 1995)(citations omitted).

Removal to federal court will be sustained if the removing

party demonstrates there is not any possibility that the plaintiff can state a claim against the nondiverse defendants. *Batoff v. State Farm Ins. Co.*, 977 F.2d 848, 851 (3d Cir. 1992). *See also DaCosta v. Novartis AG,* 180 F. Supp. 2d 1178, 1181 (D. Or. 2001); *Ritchey*, 139 F.3d at 1318 ("[A] defendant must have the opportunity to show that the individuals joined in the action cannot be liable on any theory.").

**II.  Dismissal for failure to state a claim.**

Dismissal under Rule 12(b)(6) for failure to state a claim is proper only if the pleadings fail to allege sufficient facts so as to establish a plausible entitlement to relief.  *Bell Atlantic v. Twombly*, 550 U.S. 554, 127 S. Ct. 1955, 1964-65 (2007).

> While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the "grounds" of his "entitle[ment] to relief" requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do.  Factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact).

*Id.*  The court accepts as true the allegations in the complaint and construes them in favor of the plaintiff.  *Intri-Plex Tech., Inc. v. Crest Group, Inc.*, 499 F.3d 1048, 1050 n.2 (9th Cir. 2007).

## DISCUSSION

10   -   OPINION AND ORDER

Doherty contends this Court does not have jurisdiction over this matter because Knight is a resident of Oregon, and, therefore, diversity of citizenship does not exist between the parties.  TRGiSKY concedes Knight is a resident of Oregon, but it contends the Court should disregard Knight's nondiverse status because Doherty has failed to state a cause of action against Knight.  *See Morris*, 236 F.3d at 1067.  TRGiSKY and Knight have not submitted any additional facts to support their assertion and rely only on the allegations of Doherty's Second Amended Complaint to support their assertion.

**I.   Motion to Remand.**

As noted, a district court may disregard the citizenship of a nondiverse party named in the complaint if the plaintiff has failed to state a cause of action against the nondiverse defendant and "the failure is obvious according to the settled rules of the state."  *Morris*, 236 F.3d at 1067.  Here the only nondiverse defendant is Knight, and the only claim Doherty asserts against Knight in her Second Amended Complaint is for IIED.

To bring a claim for IIED, a plaintiff must show the defendant intended to inflict severe emotional distress on the plaintiff, the defendant's actions were the cause of severe emotional distress, and the defendant's acts constituted an "extraordinary transgression of the bounds of socially tolerable

conduct." *Bourgo v. Canby Sch. Dist.*, 167 F. Supp. 2d 1173, 1184 (D. Or. 2001)(citation omitted). *See also House v. Hicks*, 218 Or. App. 348, 357-58 (2008).

"It is the defendant['s] acts, rather than [its] motives, that must be outrageous." *Ovchinikov v. Oak Valley Auto Sales & Leasing, Inc.*, No. 03-CV-905, WL 2889771, at *7 (D. Or. Dec. 13, 2004)(citation omitted). "The conduct must be 'so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.'" *House*, 218 Or. App. at 58. Insults, harsh or intimidating words, and rude behavior do not ordinarily result in liability. *Hall v. May Dep't Stores*, 292 Or. 131, 135 (1981), *abrogated on other grounds by McGanty*, 321 Or. 532 (1995). Employer conduct that is "rude, boorish, tyrannical, churlish, and mean" is similarly not actionable. *Bourgo*, 167 F. Supp. 2d at 1184. An employer-employee relationship, however, "imposes on the defendant a greater obligation to refrain from subjecting the victim to abuse." *Schoen v. Freightliner*, 224 Or. App. 613, 627 (2008). Nevertheless, Oregon courts are reluctant to impose IIED liability on employers. *Madani v. Kendall Ford Co.*, 312 Or. 198, 205-06 (1991), *abrogated on other grounds by McGanty*, 321 Or. 532 (1995).

Here Doherty contends Knight intentionally inflicted emotional distress on her when he required her doctor to evaluate

12   -   OPINION AND ORDER

her medical condition based on a written description of her job and then refused to provide her with a such a written description.  Doherty also contends Knight placed unreasonable conditions on her ability to return to work after taking protected leave by sending her a letter stating her employment would be terminated on the same day that the letter was mailed.  In addition, Doherty alleges Knight terminated her employment on the ground of "position abandonment," which, according to Doherty, Knight knew to be false.

The type of conduct that has been the foundation of IIED claims generally involves acts of psychological or physical discrimination and is typically far more egregious than the conduct in this case.  For example, Oregon courts have allowed IIED claims when employers "belittled employees based on their race, gender, or perceived sexual orientation."  *Bourgo*, 167 F. Supp. 2d at 1185 (citations omitted).  The Oregon Court of Appeals also has upheld an IIED claim when the victim was berated, insulted, and belittled on the basis of his disability in the presence of others.  *Williams v. Tri-County Metro. Transp. Dist. of Oregon*, 153 Or. App. 686, 688 (1998).  Here, however, Doherty acknowledges Knight did not engage in any yelling, insults, or physical abuse.  Instead she alleges Knight failed to accommodate her disability and terminated her employment for

13   -   OPINION AND ORDER

reasons that Knight knew to be false. Without more, however, this conduct does not rise to the level of socially intolerable behavior, which is required to state a claim for IIED. *See Laird v. Marion County*, No. 04-CV-6154, WL 1669828, at *4 (D. Or. July 14, 2005)(no valid IIED claim when plaintiff's employer refused to accommodate workplace injury and then wrongfully terminated plaintiff's employment).

Doherty also asserts Knight's behavior is intolerable in light of the fact that he knew she was an injured worker. In *Schoen*, the Oregon Court of Appeals found "some conduct by an employer that might otherwise be tolerable is intolerable if directed at a worker known to be injured." *Schoen*, 224 Or. App. at 628. In reaching its conclusion, the court relied on the fact that the plaintiff had endured "five months of persistent and pervasive demeaning treatment by [her supervisors]," including being treated, in effect, as a personal servant. *Id.* at 629. The behavior of the plaintiff's supervisors was then ratified by her human-resources manager, who called the plaintiff "worthless" when the plaintiff complained about her supervisors' behavior. *Id*. Here the alleged acts by Knight took place over the course of only a few days: Doherty initially requested accommodation on September 4, 2007, and she was terminated from her employment on

14  -  OPINION AND ORDER

September 17, 2007.  In addition, as noted, Doherty does not allege Knight engaged in any demeaning or belittling conduct. Although Knight's acts as alleged may be unreasonable, they do not rise to the level of an "extraordinary transgression of the bounds of socially tolerable conduct."  *Bourgo*, 167 F. Supp. 2d at 1184.  Accordingly, the Court concludes on this record that Doherty has not stated a claim for IIED against Knight.

As noted, Doherty is a resident of Oregon, TRGiSKY is a Delaware corporation with its principal place of business in Maryland, and Knight is a resident of Oregon.  The Court has found Doherty failed to state a claim against Knight, and, therefore, his nondiverse status may be disregarded for purposes of determining jurisdiction.  *See Morris*, 236 F.3d at 1067.  When Knight's nondiverse status is disregarded, there is complete diversity between the parties.  Doherty also has requested a minimum of $250,000 in damages for Defendants' conduct, which exceeds the amount-in-controversy requirement of $75,000.  *See* 28 U.S.C. § 1441(b).

On this record, the Court concludes it has diversity jurisdiction over this matter and, accordingly, denies Doherty's Motion to Remand.

**II.  Motion to Dismiss.**

As noted, TRGiSKY and Knight request the Court to dismiss

15   -   OPINION AND ORDER

Doherty's Claim Five for IIED on the ground that Doherty has failed to state a claim under Rule 12(b)(6) against either Defendant.

Dismissal under Rule 12(b)(6) for failure to state a claim is proper only if the pleadings fail to allege facts sufficient to establish a plausible entitlement to relief.  *Bell Atlantic v. Twombly*, 550 U.S. 554, 127 S. Ct. 1955, 1964-65 (2007).  The Court already has found Doherty does not allege facts sufficient to state a claim of IIED against Knight in her Second Amended Complaint.  Doherty alleges the same acts as the basis for her IIED claim against TRGiSKY, and, accordingly, has not alleged sufficient facts to state a claim of IIED against TRGiSKY.  Thus, for the same reasons that Doherty has failed to state a claim against Knight, she also has failed to state a claim against TRGiSKY.

On this record, therefore, the Court grants the Motion to Dismiss Claim Five of Doherty's Second Amended Complaint.

## CONCLUSION

For these reasons, the Court **DENIES** Plaintiff Doherty's Motion (#7) to Remand, **GRANTS** the Motion (#5) to Dismiss filed by

TRGiSKY and Knight, and **DISMISSES** Claim Five of Doherty's Second Amended Complaint.

IT IS SO ORDERED.

DATED this 8th day of May, 2009.

/s/ Anna J. Brown

_____

ANNA J. BROWN
United States District Judge

17  -  OPINION AND ORDER